In the Matter of the Tax Appeal of PHOTO MANAGEMENT, INC., Taxpayer-Appellee

NO. 7480

TAX APPEAL NO. 1841

SEPTEMBER 10, 1981

RICHARDSON, C.J., OGATA, MENOR,
LUM AND NAKAMURA, JJ.

580

OPINION OF THE COURT BY RICHARDSON, C.J.

The issue on appeal is whether the taxpayer, Photo Management, Inc. (hereafter PMI) should be assessed at the lower excise tax rate of one-half of one percent or at the higher rate of four percent. The Tax Appeal Court ruled that the appropriate tax classification for MPI's photographing business was "wholesaling," taxable at the lower rate, rather than "service business or calling," taxable at the higher rate. After close review of the record, we affirm.

I.

PMI was incorporated in Hawaii in December of 1974 for the purpose of taking, processing and selling photographs to various photo retailers. The firm employs about 60 persons engaged as photographers, supervisors, production crews, laboratory, delivery people and managers. Photographers may take up to 2,000 pictures per day (or over 700,000 pictures per year) of arriving passengers at the Honolulu International Airport.[1] The photographers are not highly skilled, although they may be using very mechanized equip-

---

[1] As assignee under a Partial Assignment of Concession Lease Rights, PMI has agreed to provide photography services for hire at the Honolulu International Airport in accordance with such terms and conditions contained in Lease No. DOT-A-7D-29. The fact that the assignment states PMI agrees to engage in "photography services for hire" is not determinative of this case.

ment.[2] The photographing process is geared to mass production. For instance, a PMI crew may photograph an entire 747 plane load of passengers in approximately twelve minutes. By evening that same day, the films are delivered to the PMI laboratory which is able to develop and package over 2,000 pictures per day.

PMI does not sell any developed film to the tourists. PMI sells directly to various retail photo companies. Usually a Hawaii tour agency would notify a retail photo company to arrange to have pictures taken of arriving passengers or tour groups. The retail photo company would then contact PMI to take, process and deliver the completed prints. PMI charges the retail company the same price per print, regardless of the number of prints per tour group. The retail photo company tries to resell the photos at a profit to the visitors normally during their tour group orientation. There is no guarantee that all the photos will be purchased by the tourists.[3]

PMI had filed general excise tax returns for fiscal years ending November 30, 1975 through 1978. During this period, PMI reported its gross receipts as income derived from the furnishing of "intermediary services" and paid taxes thereon at the lower rate. The Department of Taxation, however, assessed about $49,000 of additional excise taxes for the three fiscal years in question. The notice of assessment dated September 29, 1978, indicated that the additional taxes represented a change in classification from "intermediary services" to "service business or calling," taxable at the rate of four percent under HRS § 237-13(6) (1976).[4] PMI paid the additional excise taxes under protest.

---

[2] PMI does not want professional photographers taking pictures. The average pay of PMI's photographers at the time of appeal was $4.80 per hour.

[3] Usually during the morning following the arrival of a tour group, the tour company holds a briefing for the new visitors. At the briefing, a retail photo company sets up a display board to sell the pictures. These operations are repeated many times each day with various tour companies and photo retailers participating. The retailers have indicated that an average of 55% of mainland groups and 75-80% of Asian groups purchase the prints. PMI would charge the retail companies about $1.50 per print. The retailer would then charge about $5.00 per print.

[4] Section 237-13(6) provides:

Tax on service business. Upon every person engaging or continuing within the State in any service business or calling not otherwise specifically taxed under this chapter, there is likewise hereby levied and shall be assessed and collected a tax

The firm then appealed to the Tax Appeal Court. The accountant for PMI concluded that the proper classification for tax return purposes should have been "wholesaling," taxable at the same rate as "intermediary services" of one-half of one percent. The Tax Appeal Court ruled in favor of PMI, concluding that the firm was indeed engaged in wholesaling. The Director of Taxation now appeals therefrom.

## II.

The primary question we must address is whether PMI is engaged in the wholesaling business. HRS § 237-4(1) (1976) provides that:

"Wholesaler" or "jobber" applies only to a person making sales at wholesale. Only the following are sales at wholesale:

(1) Sales to a licensed retail merchant, jobber, or other licensed seller for purposes of resale[.]

The statute dictates that any sale to a person who is a licensed taxpayer and is taxed on his sales constitutes a wholesale transaction. *See* H. Stand. Comm. Rep. No. 369, 26th Hawaii Leg., *reprinted in* House Journal 501 (1951).

The only element in question in HRS § 237-4(1) is whether there exists a "sale" of some tangible personal property. HRS § 237-1

---

equal to four per cent of the gross income of any such business; provided, however, where any person engaging or continuing within the State in any service business or calling renders such services upon the order of or at the request of another taxpayer who is engaged in the service business and who, in fact, acts as or acts in the nature of an intermediary between the person rendering such services and the ultimate recipient of the benefits of such services, so much of the gross income as is received by the person rendering the services shall be subjected to the tax at the rate of one-half of one per cent and all of the gross income received by the intermediary from the principal shall be subjected to a tax at the rate of four per cent.

Section 237-7 defining "service business or calling" reads:

"Service business or calling" includes all non-professional activities engaged in for other persons for a consideration which involve the rendering of a service as distinguished from the sale of tangible property or the production and sale of tangible property. "Service business or calling" does not include the services rendered by an employee to his employer.

(1976) defines "sale" or "sales" to include "the exchange of properties as well as the sale thereof for money."

The photographic print is the primary objective of the transaction between PMI and any of the photo retailers. The retailers' only relationship with PMI is to buy color prints from it for resale to the tourists. The photo retail companies pay for each print they purchase. Although there are some service aspects to PMI's business, the predominant character of business[5] is the mass production and sale of photographs for purposes of resale. It is held elsewhere that the ultimate result of a photographic transaction is the sale of a photograph, taxable under laws which tax sales of tangible personal property. *Larey v. Dungan-Allen, Inc.*, 244 Ark 908, 428 S.W.2d 71 (1968); *Cusick v. Commonwealth*, 260 Ky. 204, 84 S.W.2d 14 (1935); *Voss v. Gray*, 70 N.D. 727, 298 N.W. 1 (1941); *Pagano, Inc. v. City of New York*, 295 N.Y. 784, 66 N.E.2d 299 (1946). Moreover, if there are any services rendered by PMI in conjunction with its mass taking and production of photographs, they are merely incidental to and an inseparable part of the transaction and the article or photograph sold is the substance thereof. *See generally Snite v. Department of Revenue*, 398 Ill. 41, 44-46, 74 N.E.2d 877, 879-80 (1947).

In addition, we are of the opinion that the legislature has not specifically classified photographers as engaged in the service business. The use of the term "photo-printer" in provisions that preceded HRS § 237-13(6) (1976)[6] probably referred to photo-finishing

---

[5] The decision in *In re* Taxes, Alexander & Baldwin, Inc., 53 Haw. 450, 497 P.2d 37 (1972), does not repudiate consideration of the primary or dominant factors of PMI's activities to determine the correct classification. The decision maintains that under HRS § 237-14 (1968) the fundamental character of a taxpayer's business does not necessarily determine tax classification; each activity must be examined. Here, however, the fundamental character of PMI's business is conclusively wholesaling.

[6] By Act 165, S.L.H. 1951, our legislature enacted into law the provision governing intermediary services. The section was incorporated into the Revised Laws of Hawaii as § 117-16(c). The section provided:

(c) Where a tire recapper, photo-printer, auto paint shop or the like, renders services upon the order of or at the request of another taxpayer who, by reason of constituting an intermediary between the person rendering such services and the ultimate recipient of the benefits of such services, is required to include the rendering of the same services in the measure of the tax levied on him under subsection (f) of section 117-14, so much gross income as is derived from the rendering of such services shall be subjected to a tax on the person rendering such

services performed for drug stores which served as retail outlets. *See generally* R. Kamins and Y. Leong, *Hawaii's General Excise Tax* 11 (1963). Hence, we think the use of the term "photoprinter" was not intended to include photographers *per se* in the tax category of "service business or calling." A print sold has no value to the purchaser except as a result of the services rendered by a photo-finisher. In the case of PMI, however, the colored photograph itself is the objective of the transaction.

Finally, although PMI reported its receipts from the sale of prints as "intermediary services," it is not estopped from having a proper determination of the classification for taxation of its receipts. *In re Taxes, Henry May & Co.,* 14 Haw. 639 (1903); *see generally Newman v. Dickson,* 305 Ky. 279, 203 S.W.2d 33 (1947); *Commissioner of Corporations & Taxation v. Ford Motor Co.,* 308 Mass. 558, 33 N.E.2d 318 (1941); *Mayor v. Texlite, Inc.,* 113 N.J. Super. 315, 273 A.2d 765 (1971). HRS § 232-2 (1976) provides that "[n]o taxpayer shall be deemed aggrieved by an assessment to the extent that it is in accordance with his return." We agree with the lower court that this provision is inapplicable where the Director of Taxation changes the assessment classification from "intermediary services" taxable at one-half of one percent to "services" taxable at four percent.

Accordingly, because (1) PMI mass produces photos with photographers who are not highly skilled, (2) the substance of the transaction between PMI and the various photo retailers is the print itself, and (3) the photo retailers purchase the prints from PMI for purposes of resale at a profit, we hold that PMI is indeed engaged in the wholesaling business.

Affirmed.

---

services at the rate of one per cent and shall be subjected to a tax on the aforesaid intermediary at the rate of two and one-half per cent.

Act 87, S.L.H. 1963, amended said § 117-16(c) to read, in pertinent part:

(c) Where a photoprinter (or the like), tire recapper, auto painter or any other person engaged in the business of cleaning, repairing or otherwise restoring to useful service tangible personal property renders services upon the order of or at the request of another taxpayer who, by reason of constituting an intermediary between the person rendering such services and the ultimate recipient of the benefits of such services, . . . .

The section has been renumbered as HRS § 237-18(c).

By Act 180, S.L.H. 1970, the legislature integrated HRS § 237-18(c) into HRS § 237-13(6). See *In re* Taxes, Busk Enterprises, Inc., 53 Haw. 518, 497 P.2d 908 (1972).

*T. Bruce Honda,* Deputy Attorney General, for Director of Taxation, appellant.

*Arthur B. Reinwald (Hoddick, Reinwald, O'Connor & Marrack* of counsel) for taxpayer-appellee.