In the Matter of the Tax Appeal of UNITED MEAT COMPANY, LTD., Taxpayer-Appellant

NO. 10511

(TAX APPEAL CASE NO. 2128)

APRIL 23, 1987

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

The excise tax levied "upon entrepreneurs [pursuant to Hawaii Revised Statutes (HRS) chapter 237] for the privilege of doing business [in Hawaii] applies at all levels of economic activity from production or manufacturing to retailing, albeit at different rates, and to virtually all goods and services." *In re Tax Appeal of Central Union Church*, 63 Haw. 199, 202, 624 P.2d 1346, 1349 (1981). The question in this taxpayer appeal from the Tax Appeal Court is whether the gross income of United Meat Company, Ltd., the operator of a slaughterhouse, is taxable at the rate of one-half of

one per cent or four per cent of such income.[1] Like the Tax Appeal Court, we conclude the Director of Taxation's assessment of taxes against the taxpayer's gross income at the higher rate was consistent with the General Excise Tax Law.

## I.

The dispositive facts are simple and, for the most part, uncontroverted.[2] The taxpayer "owns and operates the only licensed commercial slaughterhouse for hogs on the island of Oahu." It "does not buy or raise hogs, nor does it sell pork chops and related products — it slaughters hogs under contract with its customers[, who] are engaged in the business of converting live hogs into pork chops and other cuts of meat." "The customers buy or raise hogs, and bring them to United Meat for slaughtering. United Meat takes in the live hogs, and returns gutted, halved, and inspected carcasses to the customers."

## II.

### A.

The taxpayer argues the gross income derived from slaughtering hogs and gutting and halving hog carcasses is taxable at the rate of one-half of one per cent by virtue of HRS § 237-18(d) (1985), which reads:

Where, through the activity of a person taxable under section 237-13(6), a product has been milled, processed, or otherwise manufactured upon the order of another taxpayer who is a manufacturer taxable upon the value of the entire manufactured products, which consists in part of the value of the services taxable under section 237-13(6), so much gross income as is derived from the rendering of the services shall be subjected

---

[1] Although two other issues are posed by the appellant, we find neither of them worthy of discussion.

[2] The recitation of facts here is drawn from the Statement of the Case in appellant's opening brief.

to tax on the person rendering the services at the rate of one-half of one per cent, and the value of the entire product shall be included in the measure of the tax imposed on the other taxpayer as elsewhere provided.

Inasmuch as the foregoing subsection of HRS chapter 237 applies to gross income generated "through the activity of a person taxable under section 237-13(6)" and such a person is one "engaging . . . in any service business or calling not otherwise specifically taxed under the [chapter]," United Meat acknowledges it is engaged in a service business.[3] And since operators of hog slaughterhouses are "not otherwise specifically taxed under" chapter 237,[4] the rate at which the taxpayer's gross income is taxable turns on whether it "milled, processed, or otherwise manufactured [a product] upon the order of another taxpayer who is a manufacturer." HRS § 237-18(d).

The slaughtering of a hog and gutting and halving the carcass arguably can be characterized as processing a product for sale. But the pertinent statutory provision also requires that the product be "processed . . . upon the order of another taxpayer who is a manufacturer taxable upon the value of the entire manufactured prod-

---

[3] HRS § 237-13(6) (1985) reads:

Tax on service business. Upon every person engaging or continuing within the State in any service business or calling not otherwise specifically taxed under this chapter, there is likewise hereby levied and shall be assessed and collected a tax equal to four per cent of the gross income of any such business; provided, however, where any person engaging or continuing within the State in any service business or calling renders such services upon the order of or at the request of another taxpayer who is engaged in the service business and who, in fact, acts as or acts in the nature of an intermediary between the person rendering such services and the ultimate recipient of the benefits of such services, so much of the gross income as is received by the person rendering the services shall be subjected to the tax at the rate of one-half of one per cent and all of the gross income received by the intermediary from the principal shall be subjected to a tax at the rate of four per cent.

Since the gross income derived from the activities conducted by United Meat is not specifically taxed under any other provision in the General Excise Tax Law, United Meat appears to be engaged in a service business or calling taxable under HRS § 237-13(6).

[4] HRS § 237-13(6) imposes a four per cent tax on a person engaged in a service business unless the business or calling is otherwise specifically taxed by chapter 237. *See supra* note 3.

uct[]." *Id.* Unfortunately for United Meat, the record does not substantiate that whatever it may have done was at the instance of a manufacturer.

### B.

The taxpayer and the Director of Taxation agree that the bulk of the gross income upon which taxes were assessed was derived from services performed for the following customers: Island Pork Producers, Inc. (IPP), an agricultural cooperative association; Wong's Meat Market, Inc. (WMM), a wholesaler of pork, kalua pork, and roast pork; C.Q. Yee Hop, Ltd. (C.Q.), a wholesaler and retailer of pork and roast pork; and Kakazu Farm (Kakazu), a hog farm that wholesales pork to a supermarket chain. They further agree these entities "are representative of Taxpayer's customers in general."[5] A review of the customers' economic activities leads us to conclude they were not "manufacturers" for purposes of taxation under the General Excise Tax Law.

Island Pork Producers is a group of sixteen hog raisers incorporated as an agricultural cooperative association by authority of HRS chapter 421. United Meat received approximately 45% of its gross income during the relevant fiscal period from the "co-op." The hogs raised by the association's members were slaughtered, gutted, and halved at the taxpayer's slaughterhouse. The pork was then wholesaled by the "co-op" in carcass form, as primal cuts of pork, or as roast pork.[6] IPP also prepared and sold cooked pork and another product in which pork is a primary ingredient, lau lau. Kakazu Farm, like IPP's members, is a hog raiser. But unlike IPP, it wholesaled all of the pork it produced to a single customer in a fresh state. Kakazu delivered live hogs to the taxpayer's slaughter-

---

[5] The trial court's Finding of Fact 3f reads:
> The parties have stipulated that IPP, WMM, C.Q. and Kakazu, which together constitute about 86% of Taxpayer's business, are representative of Taxpayer's customers in general.

This finding is not challenged by the appellant.

[6] This resume of IPP's activities, as well as the resumes of the activities of other customers, is drawn from the trial court's findings which have not been challenged by the taxpayer.

house, and United Meat delivered hog carcasses to Big-Way Supermarkets.

Wong's Meat Market, from whom United Meat obtained approximately a third of its business during the period in question, is a wholesaler of fresh and cooked pork. Most of the pork from hogs slaughtered and partly dressed by United Meat upon the order of Wong's Meat Market, however, was sold fresh in carcass form or as primal cuts. An insignificant fraction was sold as kalua or roast pork. C.Q. Yee Hop, like Wong's Meat Market, is a seller of fresh and cooked pork. C.Q. Yee Hop's operation differed slightly from Wong's in that a small part of the former's sales were at the retail level. The pork from hogs slaughtered for C.Q. Yee Hop by United Meat was sold fresh for the most part and only a fraction thereof was offered for sale as roast pork.

## C.

Thus, United Meat's typical customers are either hog raisers or pork merchants. But the taxpayer argues they nevertheless were "manufacturers" for general excise tax purposes. It reaches this conclusion through a two-step process. Initially, United Meat contends the services performed for its customers constituted "manufacturing" within the meaning of HRS § 237-13(1).[7] It submits

---

[7] HRS § 237-13 (1985) reads in part:
There is hereby levied and shall be assessed and collected annually privilege taxes against persons on account of their business and other activities in the State measured by the application of rates against values of products, gross proceeds of sales, or gross income, whichever is specified, as follows:
(1) Tax on manufacturers.
    (A) Upon every person engaging or continuing within the State in the business of manufacturing, including compounding, canning, preserving, packing, printing, publishing, milling, processing, refining, or preparing for sale, profit, or commercial use, either directly or through the activity of others, in whole or in part, any article or articles, substance or substances, commodity or commodities, the amount of the tax to be equal to the value of the articles, substances, or commodities, manufactured, compounded, canned, preserved, packed, printed, milled, processed, refined, or prepared, for sale, as shown by the gross proceeds derived from the sale thereof by the manufacturer or person compounding, preparing, or printing them, multiplied by one-half of one per cent.

"manufacturing," as defined therein, includes "processing, refining, or preparing for sale . . . , either directly or through the activity of others, in whole or in part, any article or articles, substance or substances, commodity or commodities." Since United Meat processed or prepared hogs for sale, it claims it was engaged in manufacturing. And in its view, "if United Meat [was] performing a manufacturing activity for its customers, then, *ipso facto*, the customers [were] manufacturers." This beguilingly simple reasoning is not totally without persuasive force. Yet, we find it unacceptable because its premises are not consistent with the legislative scheme of excise taxation.

Under this scheme, "a person making sales at wholesale" is a "wholesaler" (*see* HRS § 237-4), and "any person engaged in the business of raising and producing agricultural products in their natural state" is a "producer" (*see* HRS § 237-5). Hence, Wong's Meat Market is a "wholesaler," C.Q. Yee Hop is primarily a "wholesaler," the members of IPP are "producers," and Kakazu is a "producer" for general excise tax purposes. The gross proceeds of their sales are taxable under HRS § 237-13(2)(A), which covers "every person engaging . . . in the business of selling any tangible personal property" and "every person engaging . . . in the business of a producer,"[8] and not under HRS § 237-13(1), which subjects "manufacturers" to taxation.

---

[8] HRS § 237-13(2)(A) (1985) reads:
  (2)  Tax on business of selling tangible personal property; producing.
      (A)  Upon every person engaging or continuing in the business of selling any tangible personal property whatsoever (not including, however, bonds or other evidence of indebtedness, or stocks), there is likewise hereby levied, and shall be assessed and collected, a tax equivalent to four per cent of the gross proceeds of sales of the business; provided that insofar as certain retailing is taxed by section 237-16, the tax shall be that levied by section 237-16, and in the case of a wholesaler, the tax shall be equal to one-half of one per cent of the gross proceeds of sales of the business. Upon every person engaging or continuing within this State in the business of a producer the tax shall be equal to one-half of one per cent of the gross proceeds of sales of the business, or the value of the products, for sale, if sold for delivery outside the State or shipped or transported out of the State, and the value of the products shall be determined in the same manner as the value of manufactured products covered in the cases under paragraph (1)(C) of this section.

C.Q. Yee Hop is also subject to taxation thereunder on the gross proceeds of its retail sales.

Were we to read "manufacturers" expansively as urged to cover United Meat because it slaughters and dresses hogs and to cover its customers because they cut and cook pork, we would have to say a restaurant is a "manufacturer" too. Yet no one would urge an establishment that cooks and serves food is engaged in "manufacturing." We are, therefore, convinced from a reading of HRS chapter 237 as a whole that United Meat was correctly taxed at the four per cent rate as a person engaged in a service business who performed services upon the order of "producers," "wholesalers," or "retailers" rather than "manufacturers."

Affirmed.

*Ronald I. Heller* (*Arthur B. Reinwald* with him on reply brief; *Hoddick, Reinwald, O'Connor & Marrack,* of counsel) for appellant.

*Kevin T. Wakayama,* Deputy Attorney General, for Appellee Director of Taxation.