936 P.2d 672

**In the Matter of the Tax Appeal of MAILE SKY COURT CO., LTD.**

v.

**CITY AND COUNTY OF HONOLULU, Appellee.**

**Nos. 19835, 19836.[1]**

Supreme Court of Hawai'i.

April 17, 1997.

As Amended May 6, 1997.

1. By order dated July 18, 1996, Nos. 19835 and 19836 were consolidated.

Carlito P. Caliboso (Donna Y. L. Leong with him on the briefs of Cades Schutte Fleming & Wright), Honolulu, for Appellant Maile Sky Court Co., Ltd.

Susan A. Bender, Deputy Corporation Counsel, Real Property Division, on the briefs, Honolulu, for Appellee City and County of Honolulu.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

· KLEIN, Justice.

Appellant Maile Sky Court Company, Ltd. (MSC) appeals from the Tax Appeal Court's judgment concerning certain apartments in the Outrigger Maile Sky Court for the 1994 and 1995 tax years. The issue presented in this appeal is whether a party with a secondary contractual obligation to pay the tax assessed against another has a right to challenge that assessment to the Tax Appeal Court under Hawai'i Revised Statutes (HRS) § 232–1 (1993).[2] We hold that it does.

## I. *BACKGROUND*

MSC, as Lessee/Sublessor, is a party to a "sandwich lease" with the fee owners, as Lessors, on one side, and individual apartment owners, as Sublessees, on the other. The subject property is a condominium/hotel in Waikiki.[3]

The master lease between the fee owners and MSC obligates MSC to "pay ... all taxes and assessments[.]" The lease prohibits the Lessee's assignment of the lease without the consent of the fee owners: "[n]o such assignment shall release the assignor from further liability hereunder unless the Lessor shall consent in writing to such assignment." The lease, however, permits the Lessee to sublease without the consent of the fee owners, "provided, that notwithstanding such subletting, Lessee shall at all times remain liable to the Lessor under the terms hereof."

2. HRS § 232–1 provides:

**Appeals by persons under contractual obligations.** Whenever any person is under a contractual obligation to pay a tax assessed against another, the person shall have the same rights of appeal to the board of review and the tax appeal court and the supreme court, in the person's own name, as if the tax were assessed against the person. The person against whom the tax is assessed shall also have a right to appear and be heard on any such application or appeal.

3. The description of the property as a condominium/hotel in no way reflects our view as to whether the property should be classified as a condominium, hotel, or both for tax purposes. That issue is not before us, and, therefore, we decline to address it.

Between 1990 and 1993, MSC executed numerous subleases with individual investors, mostly Japanese nationals or corporations, for apartments in the hotel. MSC subleased 252 of the 548 total units in 1995, and 248 units in 1996. A standard provision in the subleases provides that the "[s]ublessee will pay . . . all taxes and assessments[.]"

The City & County of Honolulu (the City) separately assessed, and issued a notice of property assessment, for each of the 548 units in the hotel. The City addressed all of the notices either to MSC or to the fee owners. MSC filed notices of appeal directly to the Tax Appeal Court, alleging violations of HRS §§ 232–3(2) and –3(4) (1993) [4] and Revised Ordinances of Honolulu 1990(ROH) §§ 8–12.3(1), –3(2), and –3(4).[5]

On October 2, 1995, the City filed a Motion to Dismiss, or in the Alternative, for Partial Summary Judgment (Motion to Dismiss). The City argued that the Tax Appeal Court lacked subject matter jurisdiction because (1) MSC failed to file separate appeals for each apartment, and (2) MSC failed to allege separate assessed and claimed values for each apartment.

The City did not allege in its Motion to Dismiss that MSC did not have a right to appeal the assessments for the apartment owners. Instead, counsel for the City stated at the hearing on the motion that the City "has no objection to Maile Sky Court bringing the appeals on behalf of these some 240 investor owners. The [C]ity only asks that each assessment contested be separately appealed as required by law."

On October 13, 1995, the Tax Appeal Court issued a Minute Order in which the Court determined *sua sponte* that:

> Only a taxpayer or a person having a contractual obligation (obligor) to pay a tax assessed against another may appeal an assessment to the Tax Appeal Court.

Here Appellee assessed approximately 600 units separately and informed the owners of the respective assessments. Although Appellant qualifies as a taxpayer for most of the units, it does not qualify as a taxpayer for approximately 240 units. The apartment owners of those units are the taxpayers. Nor does Appellant have a contractual obligation to pay the taxes assessed against each of those 240 units. The obligation resides solely with an apartment owner.

On October 18, 1996, MSC filed a Motion for Rehearing of the Minute Order. At the resulting hearing, MSC argued that it had standing to appeal the assessments because it had a continuing contractual obligation under the master lease to pay the real property taxes assessed against the fee owners on the entire project, including the units sold to individual owners. The City, on the other hand, argued for the first time at the hearing that:

> Section 232–1, HRS, was promulgated so that taxpayers who had a contractual obligation to pay a tax assessed against another and who actually paid the tax assessed and were aggrieved had standing to appeal the taxes assessed.

4. HRS § 232–3 provides in pertinent part:
   **Grounds of appeal, real property taxes.** In the case of a real property tax appeal, no taxpayer or county shall be deemed aggrieved by an assessment, nor shall an assessment be lowered or an exemption allowed, unless there is shown:
   . . . .
   (2) Lack of uniformity or inequality, brought about by illegality of the methods used or error in the application of the methods to the property involved, or
   . . . .
   (4) Illegality, on any ground arising under the Constitution or laws of the United States or the laws of the State (in addition to the ground of illegality of the methods used, mentioned in clause (2)).

5. ROH § 8–12.3 provides in pertinent part:

**Grounds of appeal—Real property taxes.** In the case of a real property tax appeal, no taxpayer shall be deemed aggrieved by an assessment, nor shall an assessment be lowered or an exemption allowed, unless there is shown (1) assessment of the property exceeds by more than 10 percent of the market value of the property, or (2) lack of uniformity or inequality, brought about by illegality of the methods used or error in the application of the methods to the property involved, or . . . (4) illegality, on any other ground arising under the Constitution or laws of the United States or the laws of the state or the ordinances of the city in addition to the ground of illegality of the methods used, mentioned in clause (2).

The Tax Appeal Court denied MSC's motion for rehearing:

> So under this Court's ruling, the party entitled to appeal an assessment not only must be contractually obligated to pay the assessment for another, but must also pay the assessment for the particular tax year on appeal, otherwise the person, even though it may have, as in this case, a secondary contractual obligation, is not aggrieved by the assessment. It is the person who actually renders payment who is the aggrieved taxpayer for appellate purposes, and it's the Court's construction that unless we have that foundation the Court lacks jurisdiction over a particular appeal.

Following entry of the Tax Appeal Court's judgment dismissing MSC's appeal with respect to the units that it subleased to individual apartment owners (the dismissed units), MSC filed a timely notice of appeal to this court.

## II. *STANDARD OF REVIEW*

■ It is well settled that[,] in reviewing the decision and findings of the Tax Appeal Court, a presumption arises favoring its actions which should not be overturned without good and sufficient reason. The appellant has the burden of showing that the decision of the Tax Appeal Court was "clearly erroneous."

*City and County of Honolulu v. Steiner*, 73 Haw. 449, 453, 834 P.2d 1302, 1306 (1992) (citations omitted). In a tax appeal, findings supported by substantial evidence are not clearly erroneous unless an appellate court is left with "a definite and firm conviction that a mistake has been made." *In re Tax Appeal of Frank W. Swann*, 7 Haw.App. 390, 399, 776 P.2d 395, 401 (1989) (citations omitted).

■ Questions of law, however, are reviewed under the right/wrong standard. *In re Tax Appeal of Fuji Photo Film Hawaii, Inc.*, 79 Hawai'i 503, 508, 904 P.2d 517, 522 (1995). The interpretation of a statute is a question of law. *Id.* at 508, 904 P.2d at 522; *Ross v. Stouffer Hotel Co. (Hawai'i) Ltd.*, 76 Hawai'i 454, 460, 879 P.2d 1037, 1043 (1994).

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Therefore, the fundamental starting point for statutory interpretation is the language of the statute itself.... And where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.

*Intern. Sav. and Loan Ass'n v. Wiig*, 82 Hawai'i 197, 199, 921 P.2d 117, 118 (1996) (citations and internal quotation marks omitted).

## III. *DISCUSSION*

### A. *Pursuant to HRS § 232–1, MSC, as the person under a contractual obligation to pay the tax assessed against another, has the same rights of appeal as if the tax were assessed against it.*

The Tax Appeal Court granted the City's Motion to Dismiss with respect to the units that were subleased to individual owners because MSC did not have a "contractual obligation to pay the taxes assessed against each of those ... units." The obligation to pay the taxes, according to the Tax Appeal Court, "resides solely with an apartment owner."

We begin with the proposition that the right of review of a tax assessment is purely statutory. As such, whether a person challenging an assessment bears such a relation to the real property being assessed as to entitle that person the right to appeal is determined by the applicable statutes.

■ HRS § 232–1 grants *any* person under a contractual obligation to pay the tax assessed against another the right to appeal the assessment. *See supra* note 2. The Tax Appeal Court, however, was under the mistaken belief that only the party with the *primary obligation* to pay the assessment has standing to appeal. On its face, HRS § 232–1 clearly does not limit standing to the fee owner and parties who are primarily liable for the payment of the tax assessment. The statute states in plain and unambiguous language that "[w]henever *any person* is under a contractual obligation to pay a tax

assessed against another, the person shall have the ... rights of appeal[.]" (Emphasis added). The statute neither defines nor restricts the terms "under a contractual obligation" to only those individuals who have a primary obligation to pay the taxes. Accordingly, the question for decision is whether MSC is under *any* contractual obligation to pay the taxes assessed against the fee owners.

■ The City maintains that MSC is not so obligated. According to the City, the subleases released MSC from its contractual obligation to pay the tax assessments. In support of its argument, the City refers this court to the provision in the subleases which provides that "[s]ublessee will pay ... all taxes and assessments of every description to which said premises or Sublessor or Sublessee in respect thereof are now or may during said term be assessed or become liable." This, the City submits, operates to extinguish MSC's obligation under the master lease to pay the real property taxes.

The City ignores an important provision in the master lease that explicitly states that "notwithstanding ... [the] subletting[,] Lessee shall at all times remain liable to the Lessor under the terms thereof." Therefore, under the terms of the master lease, the subletting could not have released MSC from its tax obligations.

The City further argues that the subleases operate by law to extinguish a lessee's contractual obligations under the lease. We have held, however, that "[p]rivity of estate and privity of contract continue between the lessor and the lessee after a further subletting by the lessee unless there is a surrender of the lease or a substitution of tenants." *Broida v. Hayashi*, 51 Haw. 493, 496, 464 P.2d 285, 288 (1970). In the instant case, the City failed to offer any evidence that there was a surrender of the lease or a substitution of tenants.[6]

Because MSC's contractual obligation to pay the real property taxes was neither supplanted by the terms of the subleases nor extinguished by operation of law, we hold that MSC, as a person under a contractual obligation to pay the tax assessed against another, has a right under HRS § 232–1 to appeal the assessments to the Tax Appeal Court.

B. *MSC does not have to pay the taxes to perfect its right of appeal under HRS § 232–1.*

■ The Tax Appeal Court further explained at MSC's motion for rehearing that:

the party entitled to appeal an assessment ... must also pay the assessment for the particular tax year on appeal, otherwise the person ... is not aggrieved by the assessment. It is the person who actually renders payment who is the aggrieved taxpayer for appellate purposes, and it's the Court's construction that unless we have that foundation the Court lacks jurisdiction over a particular appeal.

The Tax Appeal Court misinterprets HRS § 232–1. The statute does not require that the person actually pay the tax assessment as a precondition to obtaining the right to appeal. HRS § 232–1 states in plain and unambiguous terms that "any person ... under a contractual obligation to pay the tax assessed against another" may appeal. Nowhere in HRS chapter 232 does it require that the appealing party pay the assessment to perfect the appeal.

To require such a prepayment would obfuscate the nature and purpose of the assessment. An assessment is the first of three phases of the process of taxing real property—the remaining two being the levy and the collection. An assessment of real property, as the initial phase, is an official estimate of the value of real property for the purpose of forming the basis upon which the amount of the tax is to be computed. *See In re Taxes*

---

6. The City makes the additional argument that MSC's sole responsibility under the master lease was to collect and remit the taxes. Although the lease does require the Association of Apartment Owners, which is controlled by MSC, to retain an agent to manage the affairs of the hotel, including the collection and payment of taxes, this provision does not release MSC of its other obligations under the terms of the master lease, including the payment of taxes. Accordingly, we deem the requirement that MSC retain an agent to manage the affairs of the hotel to be wholly irrelevant to the issue of whether MSC may appeal a tax assessment under HRS § 232–1.

*Maui Agric. Co., Ltd.*, 34 Haw. 515, 536 (1938). Real property, therefore, is "taxed" when the tax is levied (i.e., when the City Council determines and declares the tax rate to be applied for the tax year) and not when it is valued by the assessor. For instance, under the City's current real property tax scheme, notices of real property assessments are issued on or before December 15 preceding the tax year, which begins on July 1 of each calendar year. *See* ROH §§ 8–2.1 and 8–6.2. Any taxpayer or owner who may deem himself or herself aggrieved by the assessment must file a notice of appeal on or before January 9. *See* ROH § 8–12.1. The tax rates are then set by City Council, and the tax bills mailed to affected parties on or before July 20. *See* ROH §§ 8–3.2 and 8–11.1(b). Payments are due on or before August 20. *See* ROH § 8–3.2.

It is therefore impossible under the City's taxing schedule for a person appealing an assessment to pay his or her taxes before the appeal deadline date because the tax rate has not been set, and the tax bill has not been mailed. By the time the taxpayer receives his or her tax bill, the deadline to appeal the assessment has passed. In other words, to require the taxpayer to pay the real property tax before or as a condition of obtaining the right to appeal would force the taxpayer to predict the tax rate and pay taxes before receiving the bill. The legislature could not have envisioned the process to function as urged by the City. *See State v. Malufau*, 80 Hawai'i 126, 137, 906 P.2d 612, 623 (1995) ("[t]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction[,] and illogicality") (citation and internal quotation marks omitted).

The City nonetheless argues that under HRS §§ 232–1 and 232–16 (1993),[7] read in pari materia,[8] only a "taxpayer" may appeal an assessment. A "taxpayer," according to the City, is "one who pays the taxes" or "has paid or would pay the taxes." *Black's Law Dictionary* 1311 (5th ed. 1979).[9] The City therefore maintains that MSC cannot appeal the tax assessments because "there is no evidence . . . that MSC had paid or would pay the taxes assessed."

We are persuaded by MSC's argument that "since a 'taxpayer' already has a right to appeal under HRS [§ ] 232–16, the City's interpretation of [HRS § ] 232–1 renders that section unnecessary and meaningless." Under the City's interpretation of HRS §§ 232–1 and 232–16, a lessee who pays the tax assessment would have the right to appeal as a "taxpayer" under HRS § 232–16. Consequently, HRS § 232–1 would be rendered superfluous, void, or insignificant. We decline to interpret the statutes in such a manner. *See In re Tax Appeal of County of Maui v. KM Hawaii Inc.*, 81 Hawai'i 248, 255, 915 P.2d 1349, 1356 (1996) ("no clause, sentence, or word shall be construed as superfluous, void or insignificant if a construction can be found which will give force to and preserve all the words of the statute").

In further support of our decision, we note that other HRS sections explicitly require prepayment before contesting an assessment.[10] Applying the maxim *expressio units est exclusio alterius*, that is, "the mention of one thing implies the exclusion of another," *Black's Law Dictionary* 763 (6th ed. 1990), we conclude that the legislature must have intended to exclude a prepayment require-

---

7. HRS § 232–16 provides that "[a] taxpayer or county . . . may appeal directly to the tax appeal court[.]"

8. "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another." HRS § 1–16 (1993). Moreover, real property tax statutes may be construed with reference to each other. *In re Valley of the Temples*, 56 Haw. 229, 234, 533 P.2d 1218, 1221 (1975); *In re Smart*, 54 Haw. 250, 253, 505 P.2d 1179, 1181 (1973).

9. We note that the *current* edition of *Black's* defines a "taxpayer" as "[o]ne who is subject to a tax on income, *regardless of whether he or she pays the tax.*" *Black's Law Dictionary* 1462 (6th ed. 1990) (emphasis added).

10. *See e.g.*, HRS § 235–114 (1993) (appeal of income tax); HRS § 237–42 (1993) (appeal of general excise tax); HRS § 238–8 (1993) (appeal of use tax); HRS § 245–10 (1993) (appeal of tobacco tax).

ment for the appeal of real property assessments.

For the above reasons, we hold that a person under a contractual obligation to pay property taxes need not pay the taxes in order to perfect an appeal of the tax assessment. The Tax Appeal Court erred when it ruled that a party must "also pay the assessment" to gain standing to appeal.

C. *A person with a secondary contractual obligation to pay the taxes is an "aggrieved party" with standing to challenge the assessment.*

In its ruling on MSC's motion for rehearing, the Tax Appeal Court mentioned that MSC was "not aggrieved" because it did not "pay the assessment." As we discussed in the previous section of this opinion, a person does not have to "pay the assessment" to gain standing under HRS § 232–1.

However, HRS § 246–46 (1993) [11] and ROH § 8–12.1 [12] both state that only an aggrieved taxpayer may appeal an assessment. This comports with HRS § 232–1, which gives the contractually obligated person the same rights of appeal as the taxpayer, who, according to HRS § 246–46 and ROH § 8–12.1, must be "aggrieved" by the assessment.

MSC first argues that HRS § 246–46 is no longer controlling because, effective July 1, 1981, the powers, functions, and duties exercised by the State director with respect to the taxation of real property were turned over to the respective counties. *See* 1980 Haw. Sess. L. Act 279, at 533 (codified in HRS chapter 246A (1993)). HRS § 246A, however, deals with the transfer of responsibilities for real property taxation to the counties and not with the parties' right to appeal. As such, it can be reasonably argued that the amendment did not disturb the parties right to appeal under HRS § 246–46.

In any event, ROH § 8–12.1 also provides that only a person who deems himself or herself aggrieved by the assessment may appeal. MSC argues that this provision is also inapplicable because the ROH applies only to appeals before the Board of Review and not to an appeal to the Tax Appeal Court. MSC cites *In re Tax Appeal of County of Maui*, 81 Hawai'i at 250 n. 3, 915 P.2d at 1351 n. 3, in support of its argument. In that case, we mentioned in a footnote that Kauaʻi County Code § 5A–12.3(1), (2) and (4), was inapplicable to the taxpayer's appeal of a judgment of the Tax Appeal Court because the code applied only to appeals before the Board of Review. The footnote was an interpretation of the specific code provision and not the entire county code. In the instant case, ROH § 8–12.1 grants an aggrieved taxpayer or owner the right to appeal "to the board of review *or the tax appeal court* pursuant to HRS Section 232–16[.]" (Emphasis added). Accordingly, ROH § 8–12.1 is applicable to the instant case, and, as such, a taxpayer must be deemed aggrieved by an assessment in order to maintain an appeal.

In the context of real property tax laws, a person is aggrieved when that "individual's pecuniary interests are or may be adversely affected." *Big V Supermarkets v. Assessor of Town*, 114 A.D.2d 726, 494 N.Y.S.2d 520, 521 (1985) (citations omitted). "That a lessee, bound by his [or her] lease to pay an assessment laid, qualifies as such an aggrieved party is past dispute." *Id.* at 521 (citations omitted). "Moreover, it is of no material consequence that aggrievement as the result of an assessed valuation originated in contract." *Id.* (citations omitted). Given these principles, and considering that MSC is contractually liable for the tax assessments—albeit secondary to the sublessees—it is apparent that the assessment may adversely affect MSC's pecuniary interests. Accord-

---

**11.** HRS § 246–46 provides in pertinent part:

    **Appeals.** Any taxpayer who deem oneself aggrieved by an assessment by the assessor or by the assessor's refusal to allow any exemption, may appeal from the assessment or from such refusal to a board of review or the tax appeal court[.]

**12.** ROH § 8–12.1 provides in pertinent part:

    **Generally.** Any taxpayer or owner who may deem himself or herself aggrieved by an assessment made by the director or by the director's refusal to allow any exemption, may appeal from the assessment or from such refusal to the board of review or the tax appeal court[.]

ingly, we hold that MSC has standing to appeal under HRS § 232–1.

## IV. *CONCLUSION*

For these reasons, we hold that MSC has a right to appeal the tax assessments under HRS § 232–1. Accordingly, we vacate the Tax Appeal Court's: (1) Final Judgment filed on April 4, 1996 relating to the "dismissed units" as it is defined in the Final Judgment; (2) Order Granting in Part and Denying in Part Appellee's Motion to Dismiss or, in the Alternative, for Partial Summary Judgment, filed on December 1, 1995; and (3) Order Denying Appellant's Motion for Rehearing of Minute Order Granting in Part Appellee's Motion to Dismiss, filed on December 22, 1995. We also remand this case for further proceedings consistent with this opinion.