77 P.3d 478

In the Matter of the Tax Appeal of
**UNIVERSITY OF HAWAI'I,**
Appellant–Appellant,

v.

**CITY AND COUNTY OF HONOLULU,**
Appellee–Appellee.

No. 23434.

Supreme Court of Hawai'i.

Oct. 1, 2003.

Wesley H. Sakai, Jr. and Scott I. Batterman (Bendet, Fidell, Sakai & Lee) on the briefs, Honolulu, for Appellant–Appellant.

Lee M. Agsalud, Deputy Corporation Counsel, City and County of Honolulu, on the briefs, for Appellee–Appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We hold that under the facts of this case Appellant–Appellant University of Hawaiʻi (the University) does not have standing to appeal the real property tax assessments levied against Sodexho Marriott Management, Inc. (Marriott) either (1) as the "owner" of the assessed property pursuant to Revised Ordinances of Honolulu (ROH) § 8–12.1 (1987),[1] or (2) as a party contractually liable to pay the tax assessed pursuant to ROH 8–

1. ROH § 8–12.1 provides in relevant part as follows:

Any taxpayer or *owner* who may deem himself of herself aggrieved by an assessment made by the director or by the director's refusal to allow any exemption, may appeal the assessment or from such refusal to the board of review or tax appeal court *pursuant to [Hawaiʻi Revised Statutes (HRS)] Section 232–16* [.]

(Emphases added.) In turn, HRS § 232–16 (2001) provides, in relevant part, that

*[a] taxpayer* or county, in all cases, may appeal directly to the tax appeal court without appealing to a state board of review, or any equivalent administrative body, established by county ordinance, by filing, on or before the date fixed by law for the taking of the appeal, a written notice of appeal in the office of the tax appeal court.

12.2.[2] Because we determine that the University lacks standing, we do not reach its other points on appeal. We therefore affirm the grant of summary judgment by the Tax Appeal Court (the court)[3] in favor of Appellee–Appellee City and County of Honolulu (the City) on the grounds set forth below.

I.

In 1988, the University issued an invitation for bids, seeking a contractor to provide a food service program at its Manoa campus. Marriott was the successful bidder, and on August 15, 1988, entered into a contract with the University. The term of the contract was for a period of fifteen years from January 1, 1989 through December 31, 2003. The contract granted Marriott "the exclusive right to provide Food Service and Convenience Service Store Operations" at the campus. In exchange for this right, Marriott agreed to provide the University with (1) rebates of eight percent of "gross sales," with an alternative minimum floor amount; (2) an investment of $12,000,000 to establish a Capital Project Escrow Account from which Marriott would expend funds for renovations, additions, and equipment replacement in existing facilities; and (3) monthly contributions into an Equipment Replacement Escrow Account. The contract also included a provision requiring Marriott to pay taxes and assessments that might be levied against either the University or Marriott. At the time

(Emphasis added.) The board of review is a five-member committee, *see* ROH § 8–12.6(a) (1990), each member having been appointed by the mayor, *see* Revised Charter of the City and County of Honolulu § 13–103(b) (2000), who has the authority to hear disputes between the taxpayers and the government, *see* ROH § 8–12.7(a) (1990).

2. ROH § 8–12.2 (1990) provides, in relevant part, as follows:

*Whenever any person is under a contractual obligation to pay a tax assessed against another, the person shall have the same rights of appeal* to the ... Tax Appeal Court and the Supreme Court, in his [or her] own name, as if the tax were assessed against him [or her].

3. The Honorable Gary W.B. Chang presided over this matter.

of Marriott's bid, the projected real property tax amount was $4,800.[4]

Marriott paid all real property taxes assessed against it, but in 1991, the City amended Marriott's real property taxes retroactively for the tax years 1988–89 through 1991–92. It did so on the ground that the City had failed to assess a building on the property, the Campus Center, because the building had not been built at the time of the original assessments. *See* ROH § 8–3.4 (1990).[5] This reassessment substantially increased the property taxes that had been originally contemplated by the University and Marriott. With the reassessment, Marriott was obligated to pay a range of taxes from a low of $18,513.52 for 1988–89 to a high of $73,724.68 for 1991–92.

Because the contract required Marriott to pay a percentage of its gross revenues to the University, the increase in tax liability had a detrimental impact on Marriott's profits. In 1991, Marriott sought relief under the contract. The existing provisions of the contract allowed Marriott to increase its prices to consumers by submitting a request to the University. Approval for an increase rested on the discretion of the University. In the event of such an adjustment, the new prices would remain fixed for a period of eighteen months after which time Marriott could again request an increase.

Inasmuch as an adjustment to Marriott's prices had recently been approved, the University believed that another price increase would discourage students from using Marriott's services on campus, and correspondingly, result in a loss of revenues to the University from its percentage of Marriott's gross sales. Accordingly, in 1991 the University and Marriott entered into a contract modification (Modification 7) that reduced the rebate percentage from eight percent to seven percent for one year, from July 1, 1991 through June 30, 1992. At the time of the modification, the University believed the City's tax assessments were illegal and recommended that Marriott appeal. Modification 7 included a provision that, should Marriott's appeal be successful, the monies rebated would be returned to the University.[6] However, Marriott did not appeal.

In 1996, the parties entered into a second modification (Modification 9), a rebate reduction again lowering the percentage to be paid by Marriott from eight percent to seven percent, effective July 1, 1993 for the remainder of the contract term. In 1996, Marriott appealed the assessments for the tax years 1996–97 and 1997–98. *See In re Sodexho Marriott Mgmt., Inc.,* Tax Appeal Case Nos. 96–5029 and 97–5387 (Consolidated). In *Sodexho,* the court held that the contract was a service contract rather than a lease and, thus, did not create an interest in the real property which would subject Marriott to any real property taxes. The court relied on *In re Fasi,* 63 Haw. 624, 634 P.2d 98 (1981).[7] Consequently, it granted Marriott's motion for summary judgment, declared the assessments null and void, and ordered a full re-

---

4. The record on appeal does not explain how the University had originally estimated in the contract that Marriott would be liable for $4,800 in real property taxes.

5. ROH § 8–3.4(a) (1990) provides:

   [I]f for any other reason any real property has been omitted from the reassessment lists for any year or years, the director shall add to the lists the omitted property. Notice of the action shall be given the owner, if known, within 10 days after the assessment or addition, by mailing the same addressed to the owner at last known place of residence. Any owner desiring a review of the assessment or the addition may appeal to the board by filing with the director a written notice thereof in the manner prescribed in Section 8–12.9 at any time within 30 days after the date of mailing such notice, or may appeal to the tax appeal court by filing

   written notice of appeal with, and paying the necessary costs to, such court within the period and in the manner prescribed in Section 8–12.8.

6. Modification 7 provides in part:

   [T]he food service rebate structure shall be reduced from 8% to 7% of gross sales for the term of one year, effective July 1, 1991 through June 30, 1992, due to a 12000% rise in property taxes. If Marriott's tax assessment appeal is successful, Marriott shall return the monies to the University.

7. In *In re Fasi,* this court held that a private party who entered into a service contract with the State to operate airport parking facilities on state-owned land was exempt from real property tax liability. *See* 63 Haw. at 632, 634 P.2d at 103.

fund. Final judgment was entered on June 17, 1998.

On August 26, 1999, the University filed a notice of appeal with the Tax Appeal Court from the tax assessment for the years 1988–89 through 1995–96. On December 29, 1999, the University filed a motion for summary judgment, relying on *In re Fasi.* It argued, among other things, that (1) it had standing to appeal as (a) the owner of the property, pursuant to ROH § 8–12.1 and (b) a person under a contractual obligation to pay a tax assessed against another, pursuant to ROH § 8–12.2. The City filed a memorandum in opposition or in the alternative, a cross-motion for summary judgment. It maintained in part that the University lacked standing to bring the tax appeal because (1) the University was not an owner aggrieved by the assessment within the definition of ROH § 8–12.1 and (2) the University was not under a contractual obligation to pay any real property taxes assessed against Marriott as described in ROH § 8–12.2.[8]

The Tax Appeal Court heard arguments on February 7, 2000, and entered a minute order granting the City's Cross–Motion for Summary Judgment on February 15, 2000. The order stated that the University lacked standing to appeal the tax assessment because it was neither a taxpayer nor a party under contractual obligation to pay Marriott's real property taxes.

The University filed a Motion for Reconsideration on February 17, 2000, arguing that, although the court had addressed the question of contractual obligation, the court had not addressed the University's alternate basis for standing as the owner of the property. In a minute order dated March 29, 2000, the court denied this motion, indicating that new matters had not been presented for its consideration. The court entered an order denying the University's motion for reconsideration or for rehearing and entered judgment for the City on May 4, 2000.

## II.

On appeal, the University argues that it has standing to bring an action to disgorge taxes that the City illegally assessed against Marriott and that the court erred in denying its motion for summary judgment. Briefly, the University contends it has standing because 1) it is an "owner" under ROH § 8–12.1, and 2) it is a party contractually obligated to pay a tax. Inasmuch as we hold that the University lacks standing, we do not address the University's other points on appeal.[9]

## III.

We review an award of summary judgment *de novo* under the same standards applied by the trial court. *See Kamikawa v. Lynden Air Freight, Inc.,* 89 Hawai'i 51, 54, 968 P.2d 653, 656 (1998). "[A] court may enter judgment for the non-moving party on a motion for summary judgment where there is no genuine issue of material fact and the non-moving party is entitled to judgment as a matter of law." *Konno v. County of Hawai'i,* 85 Hawai'i 61, 76, 937 P.2d 397, 412 (1997) (citing *Flint v. Mackenzie,* 53 Haw.

---

8. The City also declared that (1) the appeal was time-barred because the University's failure to comply with the time deadline in ROH § 8–12.1, which states that "any taxpayer or owner who may deem himself or herself aggrieved by an assessment ... may appeal from the assessment ... on or before April 9 preceding the tax year," divested the tax appeal court of jurisdiction to hear the University's appeal, (2) the contract between the University and Marriott was silent as to whether it was a lease, but rather stated that Marriott was to pay all taxes, and thus, *In re Fasi,* was inapposite, and (3) the assessments were not illegal or invalid simply because the City had rescinded a Procedures Manual that all counties had used to calculate the real property tax assessments.

9. The University also maintains that the court erred in not granting its motion for summary judgment because: 1) Marriott is not a lessee, and only an owner or a lessee can be assessed real property taxes; 2) the City violated constitutional and statutory obligations to employ uniform policies and methods of assessments; 3) the City was without statutory authority to make a re-assessment; and 4) the City's defenses, namely that the University is barred from appealing because of a statutory time limit and that the City has a contractual right to assess taxes against Marriott, were without merit.

672, 672–73, 501 P.2d 357, 357–58 (1972) (per curiam)).

■ Motions for reconsideration are "reviewed under the abuse of discretion standard. The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." *Kaneohe Bay Cruises, Inc. v. Hirata,* 75 Haw. 250, 258, 861 P.2d 1, 6 (1993) (citations omitted).

## IV.

Because the right to appeal a tax assessment is purely statutory, "whether a person challenging an assessment bears such a relation to the real property being assessed as to entitle that person the right to appeal is determined by the applicable statutes." *Maile Sky Court Co. v. City & County of Honolulu,* 85 Hawai'i 36, 39, 936 P.2d 672, 675 (1997).

The University asserts that, as the owner of the property assessed, it has standing to appeal pursuant to ROH § 8–12.1. The broad language of ROH § 8–12.1, according to the University, "does not require that the owner pay the tax or be the party against whom the tax was assessed." [10]

The term "owner" is not defined in chapter eight of the Revised Ordinances of Honolulu. The common definition of "owner" is a "person in whom is vested the ownership, dominion, or title of property[.]" *Black's Law Dictionary* 1105 (6th ed.1990). The City argues that this definition is too general, and cites to ROH § 1–2.1(a) (1990) ("[T]echnical words ... [that] may have acquired a peculiar and appropriate meaning in the law shall be construed and understood according to such peculiar and appropriate meaning.").

*Compare* ROH § 1–2.1(c) (1990) ("Ordinances in pari materia, or upon the same subject matter, shall be construed in reference to each other.") Accordingly, the City maintains that ownership status alone does not grant standing. Relying on several ordinance provisions, the City explains that Marriott was the deemed owner of the property subject to tax assessments, and thus, the fact that the University was the actual owner was irrelevant for purposes of the tax appeal.

## V.

■ Initially we note that there is statutory authority affording the right to appeal generally to an owner in HRS chapter 246, relating to real property taxes. For example, HRS § 246–12 (2001), relating to the dedication of lands to ranching or agricultural use and a subsequent tax dispensation, states that an "*owner* may appeal any disapproved petition *as in the case of an appeal from an assessment.*" HRS § 246–12(f) (emphases added). Similarly, HRS § 246–12.2 (2001), pertaining to the conditions precedent to a special assessment of land as a golf course, provides that an "*owner* may appeal any disapproved petition *as in the case of an appeal from an assessment.*" HRS § 246–12.2(E) (emphases added); *see also* HRS § 246–12.3(g) (2001) (relating to the dedication of lands for residential use); HRS § 246–34(f) (2001) (concerning the dedication of lands in an urban district for open spaces). In provisions relating to "wasteland development[,]" HRS § 246–20 (2001) states that "[a]ny *person* aggrieved by the additional assessment for any year may appeal from such assessment[.]" (Emphasis added.) Also, HRS § 246–51 (2001), pertaining to the assessment of unreturned or omitted property,[11] authorizes an "owner desiring a review

---

**10.** It is undisputed that the University does not have standing as a "taxpayer[.]" "Taxpayer," in the ordinary sense, means "[o]ne who pays the taxes" or would pay the taxes. *Black's Law Dictionary* 1311 (5th ed.1979). Under this definition of "taxpayer," Marriott is the only party affected because it was the sole party assessed and who actually paid taxes. The University was never assessed any real property taxes, nor does it contend that it falls within the definition of a "taxpayer."

**11.** An unreturned property is where "returns are required under this chapter [and a] person refuses or neglects to make such returns, or declines to authenticate the accuracy thereof as provided in section 231–15[.]" HRS § 246–51. An omitted property is where a person "omits any property from a return[.]" *Id.* Should either situation occur, "the assessor shall make the assessment according to the best information available and shall add to the assessment or tax lists for the year or years during which it was not taxed, the property unreturned or omitted." *Id.*

of the assessment or the addition ... [to] appeal to the tax appeal court by filing written notice of appeal with, and paying the necessary costs to, such court with the period and in the manner prescribed in section 232–15." Hence, it is not beyond the City's power to authorize an appeal by an owner in situations where an owner is so authorized according to statute.

Accordingly, as there is statutory authority for the proposition that an "owner" can appeal to the tax court, the City, in consonance with the specific statutes granting a right to appeal to an owner, could authorize an owner to appeal.[12] However, ROH § 8–12.1 provides that "[a]ny taxpayer or *owner* ... may appeal ... to the board of review or the tax appeal court *pursuant to HRS Section 232 16* [.]" (Emphases added.) *See supra* note 1. In turn, HRS § 232–16 provides that only "[a] taxpayer ... may appeal directly to the tax appeal court without appealing to the state board of review[.]" There is no mention of "owner" in HRS § 232–16.

■ An ordinance cannot expand jurisdiction beyond that allowed in the governing statute. *See Waikiki Resort Hotel, Inc. v. City & County of Honolulu*, 63 Haw. 222, 241, 624 P.2d 1353, 1366 (1981) ("A municipal ordinance, which is enacted pursuant to authority contained in a state statute[,] is invalid if it conflicts with the enabling statute."). Insofar as ROH § 8–12.1 allows an owner to appeal "pursuant to HRS § 232–16," it conflicts with this statute, because HRS § 232–16 does not extend the right to an appeal to an "owner." *See Waikiki Resort Hotel, Inc.*, 63 Haw. at 241, 624 P.2d at 1366 (explaining that "to determine whether an ordinance conflicts with a statute is whether it prohibits what the statute permits or permits what the statute prohibits" (citations omitted)). Accordingly, ROH § 8–12.1 must be rejected as void insofar as it extends the right to appeal

to an owner pursuant to a statute that does not similarly extend such a right.[13]

## VI.

■ The University's reliance on the outcome of *In re Sodexho Marriott Mgmt., Inc.*, Tax Appeal Case Nos. 96–5029 and 97–5387 (Consolidated) does not change this result. In *Sodexho*, the tax appeal court applied the reasoning in *In re Fasi, see supra* note 7, to conclude that Marriott was not liable for the real property taxes. The University now asserts that the court's holding establishes that it is the proper "owner" of the property and, consequently, ROH § 8–12.1 gives it standing to appeal. As discussed above, mere status as an "owner" does not afford standing to the University.

Moreover, in order for the University to be considered a taxpayer, the University must meet the aggrieved party requirement of ROH § 8–12.1.[14] ROH § 8–12.3 provides as to the bases for aggrievement as follows:

> In the case of a real property tax appeal, no *taxpayer* shall be deemed *aggrieved by an assessment* ... unless there is shown (1) assessment of the property exceeds by more than 10 percent of the market value of the property, (2) lack of uniformity or inequality, brought about by illegality of methods used or error in the application of the methods to the property involved, or (3) denial of an exemption to which the taxpayer is entitled and for which such person has qualified, or (4) illegality, on any ground arising under the Constitution or laws of the United States or the laws of the state or the ordinances of the city in addition to the ground of illegality of the methods used[.]

(Emphases added.) The University was not *assessed* the real property taxes and, therefore, could not be considered aggrieved un-

---

12. Effective July 1, 1981, the exclusive taxation authority of the State director over real property was turned over to the counties under an amendment to the Hawai'i Constitution. *See* 1980 Haw. Sess. L. Act 279, at 533 (codified in HRS chapter 246A (1993)). However, the authority to oversee and create laws for tax appeals remains with the State director.

13. We do not address the issue of whether the University has standing to appeal pursuant to a specific statute, inasmuch as the University did not raise this issue on appeal. *See* Hawai'i Rules of Appellate Procedure Rule 28(b)(7) ("Points not argued may be deemed waived.").

14. The express terms of ROH § 8–12.1 indicates that it applies to a "taxpayer."

der any of the situations described in ROH § 8–12.3.

## VII.

■ The University also contends that it has standing to appeal pursuant to ROH § 8–12.2 because it was contractually obligated to pay taxes assessed against Marriott. ROH § 8–12.2 states that "[w]henever any person is under a contractual obligation to pay a tax assessed against another, the person shall have the same rights of appeal to the . . . Tax Appeal Court and the Supreme Court, in his [or her] own name, as if the tax were assessed against him [or her]." The City, on the other hand, claims that none of the contract provisions obligated the University to pay for the real property taxes assessed against Marriott and therefore ROH § 8–12.2 does not apply.

Close examination of the contract terms supports the City's argument. First, the contract specifically obligated Marriott to pay "all taxes, rates, assessments, . . . to which the premises or the University or [Marriott], in respect thereof are now or may during said term become liable[.]" Second, Modifications 7 and 9, which concerned the tax assessments, did not obligate the University to pay the assessed tax but, rather, reduced the percentage of revenues Marriott was required to pay to the University, subject to Marriott's tax appeal. Therefore, not only was the University free from any obligation to pay the real property taxes assessed against Marriott, but, as Modifications 7 and 9 indicate, any modifications to the contract were made at the discretion of the University.

The University cites to *Maile Sky Court* for the proposition that there is no requirement that the contractual obligation under ROH § 8–12.2 be a direct one. In that case, the appellant, Maile Sky Court Company (MSC), was the lessee in a "sandwich lease" with the fee owners, as lessors, on one side

and individual investors, as sublessees, on the other side. *See* 85 Hawai‘i at 37, 936 P.2d at 673. The master lease between the fee owners and MSC, as lessee, obligated MSC to pay "all taxes and assessments[.]" *Id.* (brackets in original) (internal quotation marks and citations omitted). MSC then entered into subleases with individual investors, which provided in a standard provision that the "sublessee will pay . . . all taxes and assessments[.]" *Id.* at 38, 936 P.2d at 674 (internal quotation marks and citations omitted). However, a provision in the master lease with the fee owners explicitly stated that "notwithstanding the subletting, [MSC] shall at all times remain liable to the Lessor[s] under the terms thereof." *Id.* at 40, 936 P.2d at 676.

This court ultimately held that MSC did have standing under HRS § 232–1 as a party having a contractual obligation to pay the real property taxes on behalf of the lessees.[15] It was recognized that, under the contract, MSC was not released from its tax obligations by the provisions of the subleases, and it remained liable to pay the taxes. *See id.* at 42, 936 P.2d at 678. Having thus determined MSC's contractual obligation, it was held that MSC was "aggrieved" under ROH § 8–12.1. This court concluded that "considering that MSC is contractually liable for the tax assessments—albeit secondary to the sublessees—it is apparent that the assessment may adversely affect MSC's pecuniary interests." *Id.* Therefore, this court ruled that MSC did have standing to appeal the assessments against the sublessees. *See id.* at 42–43, 936 P.2d at 678–79.

In the instant case, although the University's "pecuniary interests are or may be adversely affected[,]" *id.* at 42, 936 P.2d at 678, because of the reduction in gross revenues payable that it granted to Marriott, the University was not contractually obligated to pay the tax assessments against Marriott.[16] In

15. *See* text accompanying *supra* note 13. The Honolulu City Council later enacted ROH § 8–12.2 employing the same wording as HRS § 232–1.

16. Similarly, we observe that the contract provision allowing for price increases indicated that

the decision was discretionary by the University. This provision states:

> The Contractor shall provide food services and convenience service store items at prices stipulated . . . which shall remain fixed for the period January 1, 1989 through June 30, 1990, provided the Federal and Hawai‘i State tax

the event of a tax deficiency, the City could not have legally assessed the tax on the University or placed a lien on the property.[17] Had the University refused to modify the contract and let Marriott bear the entire burden of the tax assessment, Marriott would not have had any contractual basis for compelling the University to indemnify it for any real property taxes paid.[18]

Reducing the percentage of revenue payable by Marriott to the University did not amount to an express contractual obligation by the University to pay the taxes on Marriott's behalf. Accordingly, the principles expressed in *Maile Sky Court* are inapposite to the instant case, and the purported adverse impact on the University is insufficient to confer standing under ROH § 8–12.2.

## VIII.

■■■ Whereas we determine that the University does not have standing under ROH §§ 8–12.1 or 8–12.2, a discussion about possible equitable remedies is appropriate here. Under the holding of *In re Sodexho Marriott Mgmt., Inc.*, Tax Appeal Case No. 96–5029 and 97–5387 (Consolidated), the City was found to have wrongfully assessed real property taxes against Marriott. Marriott could not appeal for a refund on the taxes paid from 1988–89 through 1995–96 because the statute of limitations had run,[19] and the University, the party which seemingly suffered financial loss by reducing the compensation owed it by Marriott, is itself without standing to appeal.

The United States Supreme Court faced such a situation in *United States v. California*, 507 U.S. 746, 113 S.Ct. 1784, 123 L.Ed.2d 528 (1993). The federal government attempted to recover taxes it claimed were taxed illegally by the State of California against one of its private contractors. *Id.* at 748, 113 S.Ct. 1784. The United States contracted with Williams Brothers Engineering Company (WBEC) to manage oil drilling operations in California. Under the contract, WBEC received an annual fixed fee plus reimbursement for costs, which included state sales and use taxes. *Id.* The State of California assessed taxes against WBEC, and WBEC paid the assessments under protest, using funds provided by the federal government. *Id.* at 749, 113 S.Ct. 1784. WBEC later filed suit against California, asserting that the state was taxing property outside the scope of its authority, and secured a refund of $3 million out of the $14 million in taxes that were improperly collected. *Id.* WBEC could not recover the remaining $11 million because the statute of limitations had already run for the taxes paid in the earlier years. *Id.* at 756, 113 S.Ct. 1784.

The United States then filed suit to recover the remaining $11 million. *Id.* at 749, 113 S.Ct. 1784. The case was dismissed by the District Court and Ninth Circuit Court of Appeals based on the lack of a federal common-law cause of action. *Id.* The Supreme Court granted certiorari and began its analysis by refusing to accept the federal government's arguments that it had standing as an independent entity to protest the taxes paid

---

structure and the statutory minimum wage requirements remain the same.... *Contractor's request for prices changes* in subsequent years shall be submitted to the University for review and approval by January 1 in an agreed upon format by the University and the Contractor. *Requests for changes in food prices shall be considered by the University* taking into account such factors as [the Consumer Price Index, changes in labor rates, etc.] (Emphases added.) Thus, any action rendered by the University to assist Marriott was made under its discretion, and was not the result of a contract obligation.

17.  ROH § 8–10.18(b) (1987) provides, in pertinent part, that "[t]axes shall be assessed to and collected from such lessee as nearly as possible in the same manner and time as the tax assessed

to owners of real property, except that the tax shall not become a lien against the property."

18.  The University did consider whether to directly reimburse Marriott for the taxes but decided that "this alternative is unacceptable since there is no legal basis under the contract to reimburse Marriott for the increase in property taxes."

19.  Marriott failed to appeal the tax assessments for the years 1988–89 through 1995–96 in a timely basis under ROH § 8–12.1 (1987), which states "[a]ny taxpayer or owner who may deem himself of herself aggrieved by an assessment made by the director or by the director's refusal to allow any exemption, may appeal the assessment ... on or before April 9 preceding the tax year[.]"

by WBEC. *Id.* at 751–56, 113 S.Ct. 1784. The Court then considered whether equity would afford standing inasmuch as the federal government had indemnified WBEC for all the taxes paid. *Id.* at 756, 113 S.Ct. 1784. Because the contract terms did obligate the federal government to make such indemnification, the Court ruled that the principle of subrogation was appropriate in the case. *Id.* at 759, 113 S.Ct. 1784. However, the Court affirmed the dismissal of the case because subrogation only permitted the federal government to stand in the shoes of WBEC. *Id.* at 758, 113 S.Ct. 1784. In that position, the federal government was barred by the same statute of limitations barring WBEC. *Id.*

The University asserts a similar argument of standing under its contract with Marriott. Assuming *arguendo* its contractual modifications resulted in, in effect, indemnification of Marriott, the statute of limitations would still be applicable to the University's claim. Although equity may grant standing under a theory of subrogation, the University appears to be barred by the statute of limitations faced by Marriott, just as the federal government was barred by the statute of limitations affecting WBEC in *California.* As a result, equity cannot aid the University in this situation as well.

### IX.

For the foregoing reasons, we affirm the tax appeal court's May 4, 2000 judgment in favor of the City, dismissing the University's appeal.